**Geraldine L. McCANDLESS and Fleetwood S. Quittley and Deborah M. Kintner, Petitioners,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

**Nos. 92–3434, 92–3435 and 92–3436.**

United States Court of Appeals, Federal Circuit.

Decided June 23, 1993.

David C. Todd, Patton, Boggs & Blow, of Washington, DC, argued, for petitioners.

Anith K. Marshall, Merit Systems Protection Bd., argued for respondent. With her on the brief were Mary L. Jennings and Martha B. Schneider,

Robert Sindermann, Jr., Atty., U.S. Postal Service, Stuart M. Gerson, Asst. Atty. Gen. and Jesse L. Butler, Asst. Gen. Counsel,

\* Honorable Avern Cohn, District Judge for the Eastern District of Michigan, sitting by designa-

were on the brief for amicus curiae, U.S. Postal Service.

Before MICHEL and RADER, Circuit Judges, and COHN, District Judge.\*

COHN, District Judge.

### I.

This is an appeal from decisions of the Merit System Protection Board (MSPB or Board). Petitioners, Geraldine L. McCandless (McCandless), Fleetwood S. Quittley (Quittley), and Deborah M. Kintner (Kintner) (collectively, Petitioners) were each demoted or discharged from their employment with the United States Postal Service (USPS or Postal Service). Petitioners each appealed the respective adverse employment decisions to Respondent MSPB, and each appeal was dismissed in an Initial Decision of an administrative judge (AJ) on the ground that the petitioner had not established that the appeal was within the jurisdiction of the MSPB under the Postal Employees Appeal Rights Act (PEARA) of 1987. Pub.L. No. 100–90, 101 Stat. 673; codified at 39 U.S.C. § 1005. Each petitioner then appealed the respective Initial Decision to the MSPB. The National Association of Postal Supervisors (NAPS) was granted leave to intervene in each case and the MSPB affirmed the dismissals for lack of jurisdiction. 54 M.S.P.R. 70. These appeals followed. The Postal Service has filed an amicus curiae brief in the McCandless appeal in support of reversing the MSPB determination that it is without jurisdiction. The decisions of the MSPB will be vacated and remanded because we find that the MSPB did not make adequate inquiries into the statutory and factual bases of its jurisdiction in these cases.

### II.

### A.

McCandless was employed by the Postal Service, North Platte, Nebraska, in the position.

tion of "Personnel Assistant (B)." [1] McCandless was discharged on January 3, 1991 for unauthorized use of a government vehicle and falsification of time/travel records. McCandless appealed her dismissal to the MSPB.

An AJ rendered an Initial Decision on May 23, 1991, dismissing the appeal for lack of jurisdiction. The AJ first determined that McCandless was not a preference eligible employee pursuant to 5 U.S.C. § 7511(a)(1)(B).[2] The AJ then reasoned,

> Before the Board will accept jurisdiction over a nonpreference eligible in the Postal Service, the appellant must prove that she is not entitled to collective bargaining rights and that she meets the National Labor Relations Board (NLRB) definition of a "management employee." *Anmuth v. United States Postal Service*, 45 M.S.P.R. 656, 660 (1990). The appellant did not show by direct evidence that her position was not part of a collective bargaining unit.

The AJ found that McCandless' duties did not involve an exercise of discretion broad enough to conclude that she was a management employee and found that she had only minimal supervisory responsibilities which did not warrant a conclusion that she was a supervisory employee. The AJ concluded that McCandless was not a supervisor or manager within the meaning of 39 U.S.C. § 1005(a)(4)(A)(ii).[3] The AJ also concluded that McCandless was not a confidential employee because her position was not "so aligned with management that she could not have been a member of a collective bargaining unit."

The MSPB granted NAPS leave to intervene. McCandless and NAPS then petitioned for review of the Initial Decision. In an Opinion And Order issued on April 29, 1992, 54 M.S.P.R. 76, the MSPB affirmed the AJ's Initial Decision. The MSPB rejected the argument of McCandless and NAPS that the decision in *National Association of Postal Supervisors v. U.S. Postal Service*, No. 76–1435 (D.D.C. March 30, 1978) (hereinafter "*NAPS v. USPS*"), discussed *infra* section IV, had res judicata or collateral estoppel effect. The MSPB found that McCandless was not a managerial employee because her testimony "did not indicate that she formulated management policies and also failed to show that she exercised discretion within, or independent of, established policy." The MSPB observed that the record reflected that McCandless did not supervise any other employees and that this fact, standing alone, precludes a finding that she was a supervisor within the meaning of 39 U.S.C. § 1005(a)(4)(A)(ii). The MSPB also reasoned that McCandless was not a confidential employee:

> [McCandless] testified that she was involved in the hiring and promotion of individuals for the post office, and that she dealt with the employee assistance program and with employee evaluations and merit awards. She also testified that much of the information she handled needed to be kept confidential and that there was a great deal of interest by other workers in seeing the material. There is no indication, however, that the appellant was involved in the collective bargaining or grievance process.

### B.

Kintner was employed by the Postal Service in the position of "Account Representative." [4] In September 1990, Kintner was demoted to the position of "Part-time Flexible Clerk," for participating in an altercation and

---

1. McCandless' position was rated at Executive and Administrative Schedule level 14 (EAS–14).

2. The qualifications of a preference eligible are set out in 5 U.S.C. § 2108. The AJ observed that an adverse employment decision may be appealed to the MSPB by a preference eligible employed by the Postal Service pursuant to 5 U.S.C. § 7511(a)(1)(B) which provides:

 (B) a preference eligible in the excepted service who has completed 1 year of current con-

tinuous service in the same or similar positions—

 * * * * * *

 (ii) in the United States Postal Service or Postal Rate Commission.

3. The full text of 39 U.S.C. § 1005(a)(4) is set forth below in section V.A.2.

4. Kintner's position was rated at Executive and Administrative Schedule level 15 (EAS–15).

conduct unbecoming an employee. Kintner appealed her demotion to the MSPB. An AJ rendered an Initial Decision on February 15, 1991, dismissing the appeal for lack of jurisdiction. The AJ reasoned that *NAPS v. USPS* was not controlling and concluded that Kintner was not a managerial or supervisory employee within the meaning of 39 U.S.C. § 1005(a)(4)(A)(ii).

The MSPB granted NAPS leave to intervene. Kintner and NAPS petitioned for review of the Initial Decision. On April 13, 1992, the MSPB issued an Order denying the petition for review, thus making the Initial Decision the final decision of the MSPB.[5]

### C.

Quittley was employed by the Postal Service in the position of "Safety Specialist."[6] Quittley was discharged in July 1990 for absences without official leave and failure to be regular in attendance. Quittley appealed to the MSPB. An AJ rendered an Initial Decision on April 30, 1991, dismissing the appeal for lack of jurisdiction. The AJ concluded that Quittley was not a managerial or supervisory employee within the meaning of 39 U.S.C. § 1005(a)(4)(A)(ii). The AJ also concluded that Quittley was not a confidential employee because he "failed to show that he acted in a confidential capacity in the field of labor relations or the collective bargaining process."

The MSPB granted NAPS leave to intervene on June 28, 1991 and Quittley and NAPS petitioned for review of the Initial Decision. On May 1, 1992, 54 M.S.P.R. 70, the MSPB issued an Opinion and Order affirming the dismissal of the appeal for lack of jurisdiction. The MSPB, relying on its decision in *McCandless v. U.S. Postal Service, supra*, concluded that *NAPS v. USPS* was not controlling. The MSPB proceeded to affirm the determination that Quittley was

not a managerial, supervisory or confidential employee within the meaning of 39 U.S.C. § 1005(a)(4)(A)(ii).

### III.

#### *Standard of Review*

The applicable standard of review is set forth in 5 U.S.C. § 7703(c), which provides:

(c) In any case filed in the United States Court of Appeals for the Federal Circuit, the court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence; except that in the case of discrimination brought under any section referred to in subsection (b)(2) of this section, the employee or applicant shall have the right to have the facts subject to trial de novo by the reviewing court.

### IV.

#### A.

■ Petitioners assert that this case is controlled by *NAPS v. USPS* under the doctrine of res judicata. In *NAPS v. USPS*, NAPS challenged reclassification of certain Postal Service positions that would have removed NAPS as the representative of the affected employees. The district court concluded that the reclassifications were improper and ordered the positions restored to management or supervisory classifications. There was no appeal.

■ The doctrine of res judicata only applies to subsequent cases with the same par-

---

5. The Board found that Kintner had not completed the required one year of current continuous service because for the first two months of the year prior to her demotion she occupied a position with a different title and occupational code. 39 U.S.C. § 1005(a)(4)(A)(ii)(II). Kintner argues, however, that this previous position was the "same or similar" to the one she occupied at the time of her demotion, thus satisfying the one year

jurisdictional requirement. She further argues that the Postal Service conceded that she met the one year jurisdictional requirement in its brief in opposition to her petition for review.

6. Quittley's position was rated at Executive and Administrative Schedule level 14 (EAS–14).

ties or their privies and the same cause of action. *Payer v. Department of the Army,* 19 M.S.P.R. 534, 536–37 n. 2 (1984). The elements of res judicata are absent here.

The same parties are not involved in this case.[7] Although Postal Service employees are involved, the instant action is against the MSPB, not the Postal Service. Neither is the same cause of action at issue. This case addresses the jurisdiction of the MSPB, while *NAPS v. USPS* addressed the authority of NAPS to represent the employees in the affected positions. The res judicata determination urged by NAPS and petitioners is particularly problematic in view of the fact that PEARA, under which this case arises, was enacted nearly ten years after *NAPS v. USPS* was decided.

### B.

 Petitioners also assert that *NAPS v. USPS* is controlling under the doctrine of collateral estoppel. Collateral estoppel only applies where: (1) the issue is identical to that involved in the prior action, (2) the issue was actually litigated in the prior action, (3) the determination in the prior action was necessary to the resulting judgment, and (4) the party precluded was fully represented in the prior action. *Kroeger v. U.S. Postal Service,* 865 F.2d 235, 239 (Fed.Cir.1988).

*NAPS v. USPS* did not involve the identical issue, as it addressed the authority of the Postal Service to reclassify certain positions and the authority of NAPS to represent the affected employees, while the case before the Court involves MSPB jurisdiction. Inasmuch as the identical issue was not involved in the prior case, we do not reach the second and third elements of collateral estoppel.

### C.

 The MSPB was not obliged to treat *NAPS v. USPS* as controlling under either res judicata or collateral estoppel. Petitioners further assert that, even if res judicata

and collateral estoppel are inapplicable, the MSPB should show deference to the decision in *NAPS v. USPS.* Having determined that *NAPS v. USPS* and this appeal involve different parties and different issues, this argument must fail lest the MSPB be obliged to forego determinations of its jurisdiction in individual cases in favor of following the general classification identified for the purposes of delineating NAPS's authority to represent Postal Service employees.

### V.

### A.

### 1.

The Postal Reorganization Act of 1970 (PRA), 39 U.S.C. § 101, *et seq.,* made the Postal Service the only federal entity covered by the National Labor Relations Act and subject to the jurisdiction of the NLRB. See *Blaze v. Payne,* 819 F.2d 128, 130 (5th Cir. 1987). The PRA provides in relevant part:

> The National Labor Relations Board shall decide in each case the unit appropriate for collective bargaining in the Postal Service. The National Labor Relations Board shall not include in any bargaining unit—
>
> \* \* \* \* \* \*
>
> (2) any employee engaged in personnel work in other than a purely nonconfidential clerical capacity.

39 U.S.C. § 1202.

### 2.

PEARA provides for appeal rights from adverse employment decisions affecting non-preference eligible employees who satisfy the parameters set forth in 39 U.S.C. § 1005(a)(4), which provides in relevant part:

> (A) Subchapter II of chapter 75 of title 5 shall apply—
>
> (i) to any preference eligible in the Postal Service who is an employee within the

---

7. Although in the proceeding below the parties were the same as in the *NAPS* case, they are different on appeal because of a statutory provision whereby the MSPB becomes a party in lieu of the employing agency, here the USPS. Even if the parties were considered to be the same, however, res judicata would still not apply because the cases involve different causes of action with different elements.

meaning of section 7511(a)(1)(B) of such title; and

(ii) to any other individual who—

(I) is in the position of a supervisor or a management employee in the Postal Service, or is an employee of the Postal Service engaged in personnel work in other than a purely nonconfidential clerical capacity; and

(II) has completed 1 year of current continuous service in the same or similar positions.

Accordingly, a Postal Service employee may appeal an adverse employment decision to the MSPB where the employee is a manager, supervisor or confidential employee with at least one year of continuous service. The MSPB follows the rule that the employee has the burden of establishing the predicates to its jurisdiction over an appeal. *Anmuth v. United States Postal Service,* 45 M.S.P.R. 656, 660 (1990).

### 3.

■■■ In determining whether an employee is a manager, supervisor or confidential employee, the MSPB guides itself by the decisions of the National Labor Relations Board (NLRB). *Anmuth,* 45 M.S.P.R. at 660. However, where an appeal to the MSPB is brought by a Postal Service employee, MSPB reliance on NLRB precedent may not be rote, but must be informed by an interpretation of the PRA and PEARA:

The Postal Reorganization Act made employee-management relations subject to the provisions of the [National Labor Relations Act (NLRA)] "to the extent not inconsistent with provisions of" the Postal law, 39 U.S.C. § 1209. The extent to which any aspect of the NLRA applies to the Postal Service therefore necessarily requires an interpretation of the PRA. It is only if the NLRA provision is consistent with the PRA—for which the language of the PRA, its legislative history, and its underlying policy are the interpretive tools—that the [NLRB's] interpretation of the NLRA becomes relevant. Even if it is true ... that Congress wanted labor relations in the Postal Service to become as much like that in private industry as possi-

ble, the application of that principle to any particular situation must be sustained by reference to the PRA.

*National Labor Relations Board v. United States Postal Service,* 833 F.2d 1195, 1198 (6th Cir.1987).

### 4.

The NLRB is charged with interpreting the definition of "employee" contained in 29 U.S.C. § 152(3) for the purposes of distinguishing persons includable in collective bargaining units from those excludable from such units. The NLRB has established that excluded managerial employees are "those who 'formulate and effectuate management policies by expressing and making operative the decisions of their employer.'" *National Labor Relations Board v. Bell Aerospace Co.,* 416 U.S. 267, 288, 94 S.Ct. 1757, 1768, 40 L.Ed.2d 134 (1974). "Supervisor" is defined by the National Labor Relations Act as:

Any individual having authority to, in the interest of the employer, hire, transfer, suspend, layoff, recall, promote discharge, assign, reward, or discipline other employees, or responsibility to direct them or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11).

The NLRB defines "confidential employees" as those employees who: (1) "assist and act in a confidential capacity to persons who formulate, determine and effectuate management policy in the field of labor relations," or (2) "regularly have access to confidential information concerning anticipated changes which may result from collective-bargaining negotiations." *National Labor Relations Board v. Hendricks County Rural Electric Membership Corp.,* 454 U.S. 170, 189, 102 S.Ct. 216, 228, 70 L.Ed.2d 323 (1981).

### B.

### 1.

The MSPB, in *Benifield v. U.S. Postal Service,* 40 M.S.P.R. 50 (1989), reasoned that

the NLRB definition of confidential employee was controlling for the purposes of determining whether the MSPB had jurisdiction to hear and decide the appeal of a postal employee under 39 U.S.C. § 1005(a)(4)(A)(ii)(I). The MSPB found:

> There is no dispute that the appellant was engaged in personnel-related work of a confidential and sensitive nature. The appellant, however, did not assist and act in a confidential capacity in the field of labor relations or the collective bargaining process. Mere access to personnel information is insufficient to establish confidential status.

The MSPB reasoned that the NLRB definition of "confidential employee" was controlling for the purposes of 39 U.S.C. § 1005(a)(4)(A)(ii)(I) because the NLRB had applied that definition in *U.S. Postal Service,* 232 N.L.R.B. 556 (1978), to identical language in 39 U.S.C. § 1202(2).

### 2.

In *U.S. Postal Service,* 232 N.L.R.B. 556 (1978), the NLRB concluded that Postal Service secretaries in the research and development department were not confidential employees. The NLRB found:

> The record does not demonstrate, however, that these secretaries have *any* input into the substantive creation of documents relating to merit evaluations, disciplinary actions, or related activities. Nor does it appear that these secretaries have access to labor relations policy data. In these circumstances, we find that they are not confidential employees.

*Id.* at 558 (emphasis added). More importantly, this statement was followed by a footnote which stated:

> See *San Diego Transit Corporation,* 182 NLRB 428 (1970): access to personnel records does not constitute a secretary a confidential employee as defined in *The B.F. Goodrich Company,* 115 NLRB 722, 724 (1956), which is limited to "those employees who assist and act in a confidential capacity to persons who formulate, deter-

mine, and effectuate management policies in the field of labor relations."

232 N.L.R.B. at 558 n. 4.

### 3.

The fact specific statement of *U.S. Postal Service* is consonant with the definition of confidential employee required under *The B.F. Goodrich Company,* 115 NLRB 722, 724 (1956), for exclusion from the definition of employee under 29 U.S.C. § 152(3) *and* the plain language of PRA in 39 U.S.C. § 1202(2) and of PEARA in 39 U.S.C. § 1005(a)(4)(A)(ii)(I). Clearly, an employee who meets the NLRB standard of participation in formulating, determining or effectuating management policy under 29 U.S.C. § 152(3) would be "engaged in personnel work other than in a purely nonconfidential clerical capacity" under 39 U.S.C. § 1202(2) or 39 U.S.C. § 1005(a)(4)(A)(ii)(I). It does not follow, however, that an employee "engaged in personnel work other than in a purely nonconfidential clerical capacity" under 39 U.S.C. § 1202(2) or 39 U.S.C. § 1005(a)(4)(A)(ii)(I) would necessarily also meet the NLRB standard of participation in formulating, determining or effectuating management policy under 29 U.S.C. § 152(3). Accordingly, reading *U.S. Postal Service* as finding that the definition of an excluded "confidential employee" under 39 U.S.C. § 1202(2) to be indistinguishable from a "confidential employee" excluded pursuant to 29 U.S.C. § 152(3) overstates the holding in that case and places an inappropriate emphasis on the footnote reference to *The B.F. Goodrich Company.*

### 4.

The question presented here, and not answered by *U.S. Postal Service* is whether an employee not satisfying the NLRB definition for the purposes of 29 U.S.C. § 152(3) (participation in management policy) may, nevertheless, be eligible to take an appeal under 39 U.S.C. § 1005(a)(4)(A)(ii)(I) (other than purely nonconfidential clerical personnel workers).

### C.

The MSPB, in *Benifield*, properly assumed that Congress was aware of the established administrative interpretations at the time of the enactment of PRA and PEARA. Curiously, the MSPB then reasoned that Congress was presumedly aware that the NLRB had interpreted 39 U.S.C. § 1202(2) as setting forth the same standard as applied to identify excluded confidential employees for the purposes of 29 U.S.C. § 152(3). As discussed, *U.S. Postal Service*, 232 NLRB 556 (1978), cannot fairly be read to establish that 39 U.S.C. § 1202(2) (other than purely non-confidential clerical) is necessarily interpreted as adopting or requiring the standard developed for 29 U.S.C. § 152(3).

The better application of the assumption that Congress was aware of the established administrative interpretations would look to the body of "confidential employee" law prior to the enactment of PRA, rather than a single decision predating PEARA, resting as it does on the implications to be drawn from a footnote reference to a standard not necessary to the decision. Viewed against this backdrop, the exclusion from a postal worker bargaining unit under 39 U.S.C. § 1202(2) of "any employee engaged in personnel work in other than a purely nonconfidential clerical capacity" is a marked expansion over the exclusion standard being applied to 29 U.S.C. § 152(3) employees. Indeed, assuming Congress' awareness of the established standard for exclusion of "confidential employees" under 29 U.S.C. § 152(3), it is counterintuitive to assert that Congress intended that standard to apply by including an incompatible standard in the statute creating NLRB jurisdiction over Postal Service collective bargaining units.

■ It follows then that Congress' use in 39 U.S.C. § 1005(a)(4)(A)(ii)(I) of a definition identical to 39 U.S.C. § 1202(2) reveals an intention that the employees excluded from the collective bargaining units, i.e., ineligible by law for membership in such units, under the jurisdiction of the NLRB would have appeals rights within the jurisdiction of the MSPB.

### D.

The MSPB relies on incompatible principles: (1) that Congress intended the NLRB's established definition of "confidential employee" to apply to 39 U.S.C. § 1202(2), in spite of the clear difference between that definition provided in that section and the established definition for 29 U.S.C. § 152(3) purposes, but (2) the MSPB is free to determine its jurisdiction over postal employees under 39 U.S.C. § 1005(a)(4)(A)(ii)(I), without regard to whether the employee was excluded from the collective bargaining unit pursuant to the identical language of 39 U.S.C. § 1202(2). As a consequence, the MSPB asserts that, although 39 U.S.C. § 1005(a)(4)(A)(ii)(I) is the mirror image of 39 U.S.C. § 1202(2), a third group exists comprised of those Postal Service employees that are not included under the former section even though they are excluded under the latter.

### VI.

### A.

■ While the MSPB must determine whether it has jurisdiction over an appeal from an adverse employment decision affecting a Postal Service employee, that determination must also be consonant with the language and purposes of the PEARA. The MSPB's jurisdictional determination in these cases rests on reasoning that the mirror image language of 39 U.S.C. § 1005(a)(4)(A)(ii)(I) and 39 U.S.C. § 1202(2) was not intended to identify a single demarcation between the jurisdiction of the NLRB and the MSPB, but was somehow intended to permit the emergence of a third group of Postal Service employees without rights before either body. There is no support in the record of these cases for the MSPB position that its jurisdictional inquiry is not constrained by the clear language of the statute or may result in the creation of a group of Postal Service employees with neither grievance nor appeal rights. Even without revisiting the reasoning of *Benifield* that no significance attaches to Congress having provided a definition of confidential employee in 39 U.S.C. § 1202(2) that is distinct from the established definition for the purposes of 29 U.S.C. § 152(3), the statutory scheme of

PRA and PEARA cannot fairly be construed to permit the amorphous jurisdiction of the MSPB suggested by these cases.

### B.

■ The Postal Service, in its brief amicus curiae, stipulates that McCandless is a "confidential employee" excluded from any collective bargaining unit under the jurisdiction of the NLRB. The MSPB's response that third parties may not determine the jurisdiction of an adjudicatory body goes too far. The Postal Service and the NLRB are not strangers to the statutory scheme that defines the jurisdiction of the MSPB. The MSPB inquiry into whether it has jurisdiction cannot be, as it was in McCandless, divorced from the factual record and the determination of the Postal Service or the NLRB as to the classification of the employee.

### C.

Having concluded that the legal issue in *NAPS v. USPS* was distinct from that presented in these cases, the MSPB failed to consider the proper import of the factual issue of *NAPS v. USPS* to a determination of MSPB jurisdiction. The MSPB also failed to consider the job descriptions of the affected Postal Service employees with respect to their exclusion from any collective bargaining unit and significance of that exclusion to the affected employees' appeal rights to the MSPB.

### D.

Accordingly, the decisions of the MSPB in these cases are VACATED and these cases are REMANDED for further proceedings consistent with this opinion.

VACATED and REMANDED.

### COSTS

Each party to bear its own costs.

RADER, Circuit Judge, dissenting.

I agree with the court that the district court decision in *National Ass'n of Postal Supervisors v. United States Postal Service,* No. 76–1435 (D.D.C. March 30, 1978) (*NAPS*), did not control the MSPB's jurisdictional determination. Thus I concur in Part IV of the court's opinion. Because substantial evidence supports the Board's factual determinations that appellants were not managers, supervisors, or confidential employees, however, I must dissent from the court's judgment. I would affirm the MSPB's dismissal of these appeals for lack of jurisdiction.

Appellants had the burden of showing that the MSPB had jurisdiction over their appeals. 5 C.F.R. § 1201.56(a)(2); *Maddox v. Merit Sys. Protection Bd.,* 759 F.2d 9, 10 (Fed.Cir.1985). Specifically, each appellant had the burden of showing qualification as a supervisory, managerial, or confidential employee and completion of one year of continuous service. 39 U.S.C. § 1005(a)(4)(A)(ii). Once the majority determined that *NAPS* did not bind the Board, the MSPB's jurisdictional determinations turned upon the record evidence.

Substantial evidence supports the Board's determination that appellants had not shown that they performed managerial or supervisory duties or were confidential employees. Ms. Kintner relied solely upon the similarity of her position (Account Representative) to a position found supervisory and managerial in *NAPS*. Ms. Kintner produced no evidence that she performed supervisory or managerial duties and did not allege that she was a confidential employee. In addition, the Board found that Ms. Kintner had not established that she had completed the required one year of current continuous service under 39 U.S.C. § 1005(a)(4)(A)(ii)(II). This fact alone deprives the Board of jurisdiction over Ms. Kintner's appeal. Because the court does not find error in the Board's current continuous service determination, the court should affirm the Board's jurisdictional holding as to Ms. Kintner for this additional reason.

Mr. Quittley, a Safety Specialist, admitted that he was not a supervisor. The record contains substantial evidence supporting the administrative judge's findings that Mr. Quittley did not perform managerial duties.

Moreover any "confidential" aspects of Mr. Quittley's job bore no relation to the field of labor relations or the collective bargaining process.

Like Ms. Kintner, Ms. McCandless solely relied on the *NAPS* decision to qualify as a supervisory or managerial employee. The record amply supports the Board's determinations that Ms. McCandless, a personnel assistant, did not supervise or manage. The MSPB also correctly found that Ms. McCandless had presented no evidence that she acted in a confidential capacity in the field of labor relations or collective bargaining. The Board's jurisdiction is controlled by statute, not by the stipulations of the parties.

In sum, the record substantially supports the Board's determinations. I would affirm the Board.